NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**U.S. AEROTEAM, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-2272

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01096-MBH, Senior Judge Marian Blank Horn.

---

Decided: July 5, 2022

---

MILTON C. JOHNS, Executive Law Partners, PLLC, Fairfax, VA, argued for plaintiff-appellant.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, LISA LEFANTE DONAHUE, PATRICIA M. MCCARTHY.

---

Before LOURIE, PROST, and TARANTO, *Circuit Judges.*

LOURIE, *Circuit Judge.*

U.S. Aeroteam, Inc. ("Aeroteam") contracted with the United States Air Force to build ground support trailers. After Aeroteam incurred additional costs building the trailers, it requested compensation from the Air Force. The Air Force denied its request. Aeroteam filed a complaint at the United States Court of Federal Claims ("the Claims Court"). The Claims Court entered judgment in favor of the United States. *U.S. Aeroteam, Inc. v. United States*, No. 1:18-cv-01096-MBH (Fed. Cl. 2019), J.A. 3–9. We *affirm* the court's judgment for the reasons explained below.

BACKGROUND

Aeroteam is a contractor that specializes in building components for the aerospace industry. In 2009, the Air Force awarded Aeroteam a contract to produce ground support trailers. J.A. 1709–10. The Air Force uses those trailers to transport aircraft engines. J.A. 1709.

In 2011, Aeroteam began having difficulties obtaining a key component of the trailers—the running-gear subassembly. J.A. 1712. The running gear is "essentially the drive train" for the trailer, "allow[ing] [it] to roll, brake, [and] steer." J.A. 1710. To obtain the running gears, Aeroteam relied on PDI Ground Support Systems, an approved vendor under the contract.[1] J.A. 1711–12. PDI initially charged Aeroteam $20,300 per unit. J.A. 1711. After facing financial difficulties, however, PDI raised its price. J.A. 7 (845:1–6). In response, Aeroteam decided to manufacture the running gears itself. According to Aeroteam, it could produce them "as well or better than PDI."

---

[1] Under the terms of the contract, Aeroteam could procure the running gears only from certain approved vendors, including PDI. J.A. 1710–11.

J.A. 1713–14; J.A. 1861 (342:3–12); J.A. 2125. Aeroteam was also concerned that PDI could not continue to supply it with the running gears in light of its financial situation.[2] Appellant's Br. 8. Subsequently, Aeroteam formally asked the Air Force if it could assume responsibility for manufacturing the running gears. J.A. 1714. Its request read, in relevant part, as follows:

> US Aeroteam proposes to manufacture the entire running gear and brake system for TT90-F-507 Trailers Sernos 0020-0041 because PDI has refused to complete the contract as awarded.

J.A. 2125 (capitalization modified). The contracting officer approved Aeroteam's request, stating that the manufacturing change was "acceptable." J.A. 1715–16. On September 6, 2012, the Air Force awarded Aeroteam a second contract to produce additional trailers. J.A. 1716.

Shortly after Aeroteam began manufacturing the running gears for the trailers, it discovered that its costs were higher than it had expected. J.A. 7. As a result, Aeroteam sought to recoup those costs and filed a request for equitable adjustment in the amount of $1,385,912 for the first contract and $4,022,273 for the second contract. J.A. 29–30; Contract No. FA8526-09-C-0007 and Contract No. FA8526-12-C-0039. As relevant here, both of Aeroteam's contracts were "firm-fixed-price," meaning that they "place[d]" upon Aeroteam the "maximum risk and full responsibility for all costs and resulting profit or loss." Federal Acquisition Regulation § 16.202-1; J.A. 1710, 1716.

The contracting officer denied Aeroteam's request for equitable adjustment. J.A. 1717. Aeroteam then filed a complaint at the Claims Court, alleging three grounds for

---

[2] The government disputes Aeroteam's assertion that PDI could no longer produce the running gears. We further address that argument below.

recovery: (1) constructive change, i.e., the Air Force ordered Aeroteam, expressly or impliedly, to perform work beyond the contract requirements; (2) cardinal change, i.e., the Air Force effected an alteration in the work so drastic that it effectively required Aeroteam to perform duties materially different from those it originally bargained for; and (3) commercial impracticability, i.e., because of unforeseen events, Aeroteam could perform the contract only at an excessive and unreasonable cost or performance would be commercially senseless.

The Claims Court denied Aeroteam's claims, issuing its decision from the bench without a subsequent written opinion. With respect to the constructive and cardinal change claims, the court held that Aeroteam had failed to prove that the Air Force ordered it to manufacture the running gears.[3] Rather, according to the court, Aeroteam independently chose to do so. J.A. 7 (846:11–13); J.A. 8 (849:1–2). With respect to the commercial impracticability claim, the court found that Aeroteam could have continued to buy the running gears from PDI, albeit at a higher price. J.A. 5 (838:14–16). The court also pointed out that, because Aeroteam had entered into a fixed-price-contract, it assumed the risk that the price of the running gears would change. J.A. 6 (840:21–841:1); J.A. 7 (846:13–15).

After concluding that Aeroteam failed to prove its claims for recovery, the court entered judgment in favor of the government. J.A. 1. Aeroteam appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

This court reviews legal determinations of the Claims Court de novo and its findings of fact for clear error. *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed.

---

[3]    The Claims Court discussed cardinal change in conjunction with constructive change.

Cir. 2005) (citing *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1379 (Fed. Cir. 2001)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Aeroteam argues that the Claims Court erred in denying its claims for (1) constructive change, (2) cardinal change, and (3) commercial impracticability. We address each argument in turn.

I

We turn first to Aeroteam's argument regarding its constructive change claim. To demonstrate a constructive change, a contractor must show "(1) that it performed work beyond the contract requirements, and (2) that the additional work was *ordered, expressly or impliedly, by the government*." *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014) (emphasis added) (citing *Redland Co. v. United States*, 97 Fed. Cl. 736, 755–56 (2011)). The parties' dispute centers on the second element of constructive change.

Aeroteam argues that the Claims Court erred in denying its constructive change claim. According to Aeroteam, it did not choose to manufacture the running gears. Rather, the Air Force ordered it to make that change. The government responds that Aeroteam independently chose to manufacture the running gears, with no express or implied order from the Air Force.

We agree with the government that the Claims Court did not err in denying Aeroteam's constructive change claim. As the Claims Court held, Aeroteam failed to prove that the Air Force ordered it to manufacture the running gears. J.A. 7 (846:11–15); J.A. 8 (849:1–8). On the contrary, that was "a choice that Aeroteam made." J.A. 7

(846:11–13). Specifically, after learning of PDI's financial difficulties, Aeroteam coordinated a plan to manufacture the running gears. Aeroteam did so because it was "confident that [it could] produce" the running gears "as well or better than PDI"—not because it was ordered to by the Air Force. J.A. 1713–14. Indeed, Aeroteam itself "*propose*[*d*]" to the Air Force that it "manufacture the entire running gear." J.A. 2125 (emphasis added and capitalization modified). Moreover, Aeroteam acknowledged that it could not "do[] anything" with respect to manufacturing until it sought the Air Force's approval. J.A. 1714–15. Accordingly, in view of the record before us, we see no clear error in the court's determination.

Aeroteam makes several additional arguments, all unpersuasive. First, Aeroteam emphasizes that the Air Force approved its manufacturing request. According to Aeroteam, because of that approval, the Air Force effectively directed it to manufacture the running gears. We disagree. Mere approval, standing alone, is insufficient to prove constructive change. Rather, there must be an "order[]," either "express[] or implied[]." *Bell/Heery*, 739 F.3d at 1335 (citing *Redland*, 97 Fed. Cl. at 755–56). Accordingly, Aeroteam's argument is unpersuasive.

Second, Aeroteam argues that the Claims Court "expand[ed] the requirements" necessary to prove a claim for constructive change. Appellant's Br. 21. Specifically, Aeroteam points to portions of the court's decision suggesting it was required to prove that the government authorized a "change in contract price." *See* Appellant's Br. 21–22; J.A. 6 (841:17–22) ("[T]he government . . . [did not take] that next step of authorizing or directing a *change in the contract price*.") (emphasis added); J.A. 8 (849:9–11) ("The drawings, the expectation of whether the plaintiff could produce it in-house appropriately, that was approved, but *the price change* was not.") (emphasis added). According to Aeroteam, because of the court's misstatements, we must reverse its decision.

We disagree with Aeroteam. Certainly, to prove a claim for constructive change, a contractor need not show that the government authorized a change to the contract price. Rather, it need only show that the government ordered it (expressly or impliedly) to perform work beyond the contract requirements. *See Bell/Heery*, 739 F.3d at 1335 (citing *Redland*, 97 Fed. Cl. at 755–56). To the extent the Claims Court suggested otherwise, that was erroneous. Regardless, any such error was harmless. As explained above, the court carefully evaluated the evidence and determined that Aeroteam chose to manufacture the running gears itself, with no express or implied order from the Air Force. *See* J.A. 4 (833:23–834:3) ("[T]o demonstrate a constructive change, [a] plaintiff has to show . . . that the additional work was ordered expressly or impliedly by the government."); J.A. 7 (846:11–13) ("The termination that [Aeroteam] exercised toward[] PDI was, again, a *choice* that [it] made.") (emphasis added); J.A. 8 (849:8) (Aeroteam "*offered* to pull [the manufacturing] in-house.") (emphasis added). Thus, the court's possible suggestion of an additional requirement for constructive change did not affect the outcome of the case. *See Valles v. Dep't of State,* 17 F.4th 149, 152 (Fed. Cir. 2021) ("As an appellate court, we are obligated to apply the rule of harmless error, examining the record 'without regard to errors or defects which do not affect the substantial rights of the parties.'" (quoting 28 U.S.C. § 2111)).

Accordingly, we affirm the Claims Court's determination that the Air Force was not liable for constructively changing the contract.

## II

We next turn to Aeroteam's argument regarding its cardinal change claim. To demonstrate a cardinal change, a contractor must show that the "*government effect[ed]* an alteration in the work" that "effectively require[d] the contractor to perform duties materially different from those

originally bargained for." *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1543 (Fed. Cir. 1996) (emphasis added) (quoting *AT & T Commc'ns, Inc. v. WilTel, Inc.,* 1 F.3d 1201, 1205 (Fed. Cir. 1993)). "By definition . . . a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach." *Id.*

Aeroteam argues that the Air Force was liable for making a cardinal change to the contract. In support of its argument, Aeroteam again asserts that the Air Force ordered it to manufacture the running gears in-house. The government responds that Aeroteam's cardinal change claim fails for the same reason that its constructive change claim fails: Aeroteam *chose* to manufacture the running gears. The Air Force did not order it to do so.

We agree with the government. As explained above, the evidence showed that Aeroteam chose to manufacture the running gears; the Air Force did not "*effect* an alteration" in Aeroteam's work. *See* J.A. 7 (846:11–13); *Krygoski*, 94 F.3d at 1543 (emphasis added) (quoting *AT & T*, 1 F.3d at 1205).[4] Accordingly, we affirm the Claims Court's determination that the Air Force was not liable for making a cardinal change to the contract.

## III

Finally, we turn to Aeroteam's argument regarding its commercial impracticability claim. To prove commercial impracticability, a contractor must show that "because of unforeseen events, [the contract] can be performed only at

---

[4]    Because we determine that the Air Force did not "*effect* an alteration" in Aeroteam's work, we need not reach the question whether any alteration was "materially different from those [that Aeroteam] originally bargained for." *Krygoski*, 94 F.3d at 1543 (emphasis added) (quoting *AT & T*, 1 F.3d at 1205).

an excessive and unreasonable cost" or "all means of performance are commercially senseless." *Raytheon Co. v. White*, 305 F.3d 1354, 1367 (Fed. Cir. 2002) (citations and internal quotation marks omitted).

Aeroteam argues that it would have been commercially impracticable for it to perform the contract. According to Aeroteam, PDI could "no longer produce" the running gears in light of its financial difficulties. Appellant's Br. 8. In support of its argument, Aeroteam emphasizes that PDI's products were "plagu[ed]" with quality control issues, making it doubtful that it could complete the manufacturing order. *Id.* The government responds that PDI could have continued to manufacture the running gears. Specifically, the government contends that PDI did not decline to manufacture the running gears after facing financial difficulties. Rather, it merely raised the price per unit. The government adds that Aeroteam could have paid that higher price but chose not to for its own financial reasons.

We agree with the government. After considering the evidence, the Claims Court found that Aeroteam could have continued to buy the running gears from PDI. J.A. 5 (838:14–16) ("[T]he evidence does not support that at the higher price, PDI would not have continued to supply the product."). The court acknowledged that PDI faced financial difficulties. It explained, however, that those difficulties caused PDI to raise the price of its running gears, not to stop producing them altogether. J.A. 7 (845:1–7). The court further emphasized that Aeroteam could have bought the running gears for the higher price but *chose* not to do so. J.A. 7 (845:8–10).[5] Finally, the court found that Aeroteam failed to provide evidence "document[ing]" that the

---

[5] The Claims Court did not make a conclusive finding regarding the amount that PDI charged Aeroteam after facing financial difficulties. PDI charged other parties up to $38,000. J.A. 1861 (341:6–20).

higher price was excessive.[6] J.A. 7 (845:14–16). Aeroteam points to no clear error in the court's factual findings. Rather, it effectively asks us to reweigh the evidence and hold in its favor. We decline to do so.

Aeroteam further argues that the Claims Court misstated the law on firm-fixed-price contracts. According to Aeroteam, the court "seem[ed] to hold" that a contractor entering into a firm-fixed-price contract may not raise a claim for commercial impracticability. Appellant's Br. 26–27.

We disagree with Aeroteam's reading of the court's decision. The court did not suggest that Aeroteam was barred from raising a commercial impracticability claim. Rather, it stated that certain types of changes to Aeroteam's firm-fixed-priced contracts were not necessarily compensable, including, for example, an increase in the market price of running gears. J.A. 5 (837:1–5) ("A finding of impracticability excuses a party from performing *unless the party has assumed the risk of the event.*") (emphasis added). As the court explained, that was "part of the risk" that Aeroteam assumed in entering a firm-fixed-price contract. *See* J.A. 5 (837:23–838:6); J.A. 7 (846:13–15); *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1295 (Fed. Cir. 2002) ("The normal risk of a fixed price contract is that the market price will change." (quoting *N. Ind. Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 275 (7th Cir. 1986))). Accordingly, we affirm the court's determination that it was not impracticable for Aeroteam to perform the contract.

---

[6]    Although the Claims Court initially stated that it "guess[ed]" the higher price made PDI an "unavailable source," it immediately qualified that statement by emphasizing that "it was *also a matter of choice* on the part of [Aeroteam] not to pay the higher price." J.A. 7 (845:8–10) (emphasis added).

In summary, the Claims Court did not clearly err in denying Aeroteam's claims for constructive change, cardinal change, or commercial impracticability.

## CONCLUSION

We have considered Aeroteam's remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the Claims Court is *affirmed*.

## AFFIRMED